UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
JAMES B. FERRARI,

                    Plaintiff,              <u>MEMORANDUM & ORDER</u>
                                            10-CV-4218 (JS)(WDW)
        -against-

COUNTY OF SUFFOLK,
CHRISTINE MALAFI, individually,
JOHN DOES # 1-10, individually,

                    Defendants.
-----------------------------------X
APPEARANCES:
For Plaintiff:      David Antwork, Esq.
                    Andrew J. Campanelli, Esq.
                    Campanelli & Associates
                    129 Front Street
                    Mineola, NY 11501

For Defendants:     Christopher M. Gatto, Esq.
                    Suffolk County Attorney's Office
                    H. Lee Dennison Building, 5th Floor
                    100 Veterans Memorial Highway
                    Hauppauge, NY 11788-4311


SEYBERT, District Judge:

        Pending before the Court is Defendants' Fed. R. Civ. P.

12(b)(6) motion to dismiss.  <u>See</u> Docket Entry 4.  For the following

reasons, this motion is GRANTED IN PART AND DENIED IN PART.  The

claims against Suffolk County remain, but the claims against

Christine Malafi and John Does #1-10 ("Individual Defendants") are

DISMISSED WITHOUT PREJUDICE.

On May 26, 2009, Plaintiff James B. Ferrari drove his 2003 Ferrari westbound on South Country Road in Bellport, New York at a speed in excess of 100 miles per hour, zigzagging across the double-yellow line as he sped along.  Mot. to Dismiss, Ex. A.[2] Pulled over by an arresting officer, Ferrari, whose eyes were red and whose gait was marked by a decided lack of maneuverability and performance, had a smell of alcohol about him.  Id.  With slurred speech, Ferrari duly confessed to having consumed alcohol before driving and also confided that his intoxication was partly fueled by thirteen prescribed medications at the time.  Id.  The arresting officer then spotted what appeared to be crack cocaine inside Ferrari's Ferrari.  "The crack pipe's mine," Ferrari offered.  Id.

Driven back to the police precinct following his arrest, Ferrari stalled when asked to submit to a chemical test.  Id.  Here it was discovered that he had been previously convicted of driving

_____

[1] Plaintiff's Complaint attaches, and relies upon, the transcript of the informal hearings before Justice John DiNoto. Accordingly, though accepting the Complaint's factual allegations as true, the Court constructs much of this opinion's factual background from documents introduced into evidence at this hearing, or from statements made during these proceedings.  See, e.g., ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (noting that, on a Rule 12(b)(6) motion, the Court may consider any written instrument attached to the complaint, documents possessed by, or known to, the Plaintiff and upon which he relied in bringing this lawsuit, and statements or documents incorporated into the complaint by reference).

[2] Plaintiff's Exhibit B, attached to the Complaint, makes repeated reference to the arresting officer's report.

while intoxicated on April 26, 2007.  Id.  The decision was therefore made, pursuant to Suffolk County Code Chapter 270, to temporarily impound Ferrari's Ferrari pending a post-seizure hearing scheduled for June 9, 2009.

At the post-seizure hearing on June 9, 2009, Ferrari's counsel informed the neutral magistrate, Justice John DiNoto, that Ferrari would not be appearing in the courtroom that day.  Compl., Ex. A, at 3.  To counsel's surprise, Justice DiNoto reacted by holding that the hearing could not move forward without Ferrari in court.  "Credibility is a big issue in any trial," Justice DiNoto noted, "and there may be a determination with respect to the issues that have to be addressed by counsel asking questions of the witness."  Id.  Over counsel's protests, Justice DiNoto then adjourned the post-seizure hearing for nearly three months to September 1, 2009.

Once again on September 1, 2009, Ferrari's counsel made an appearance on his client's behalf, without Ferrari present. Compl., Ex. B, at 4.  This time around, however, Justice DiNoto permitted the hearing to proceed.  Plaintiff's counsel began by stating, correctly, that Ferrari bore no burden of proving anything, and thus had no obligation to personally appear.  Id. at 5.  The County opened by: (i) seeking a missing witness charge based on Ferrari's non-appearance; (ii) arguing that "there is no reason that this gentleman needs this vehicle back"; (iii)

contending, incorrectly, that "Mr. Ferrari needs to testify as to what his hardship is going to be in this particular case"; (iv) setting forth, wrongly, that Ferrari had "the burden under the statute to show hardship and should be present." Id. at 5-6.

The parties then stipulated to the admission of the following relevant evidence: (i) Exhibit A, comprising two sworn felony complaints filed by the arresting officer, who attested that, on May 26, 2009, Ferrari drove while impaired by the combined influence of drugs and alcohol, and/or while under the influence of drugs and alcohol (Mot. to Dismiss, Ex. A); (ii) Exhibit B-2, the "Report of Refusal to Submit to a Chemical Test," which showed that Ferrari refused to submit to a chemical test at the precinct (id. at Ex. B); (iii) Exhibit C-1, which established Ferrari's prior conviction for driving while intoxicated on April 26, 2007 in New York County; (iv) Exhibit C-2, an abstract of Ferrari's New York State DMV driving record, indicating that he also had convictions for driving while impaired (on June 13, 2005 in Nassau County Court), for unlicensed operation of a motor vehicle (on April 2, 2006), as well as a host of driver's license suspensions or revocations (id., Ex. C); and, (v) Exhibit E, another printout from the DMV, which showed that Ferrari owned another vehicle--a 2003 Land Rover, which was registered under his name. (id., Ex. F) After introducing this evidence the County rested; Ferrari's counsel, meanwhile, offered no evidence. Compl., Ex. B, at 11.

After resting, but before summation, the County again reiterated that Ferrari owned another vehicle, the Land Rover, and thus could not show "hardship" from losing the Ferrari. Id. at 10-11.

Summations then ensued. Ferrari's counsel argued that, because the County adduced no evidence that the Ferrari would be moved out of the state, destroyed, or sold, the sports car could not be properly impounded pursuant to Krimstock v. Kelly, 306 F.3d 40 (2d Cir. 2002). For its part, the County argued that: (i) "based on his driving record . . . [t]he County believes that the vehicle would be damaged or even removed from the state if it was allowed to go back to the owner"; (ii) "there's obviously a problem with Mr. Ferrari. Therefore, the County believes that a bond, a restraining order, or any of the other means available to them . . . would not maintain this vehicle in the manner and in the form that it was taken when it was seized"; (iii) "Mr. Ferrari has not proven to be a responsible driver in this particular case"; and (iv) because there are no lien holders, Krimstock is "dicta." Id. at 14-17. The County added, however, that it sustained any "burden" Krimstock might impose. Id.

After weighing the parties' arguments, Justice DiNoto ruled as follows: "After a hearing and based on the credible evidence adduced at the hearing, I find firstly that there was, in fact, probable cause for the stop and arrest in this case. The

second part of my determination is that Suffolk County is directed to retain the vehicle pending resolution of the forfeiture proceeding." <u>Id.</u> at 18. Apart from his reference to probable cause, the Justice did not explain how (or, indeed, whether) his reasoning squared with <u>Krimstock</u>. <u>Id.</u> At no time did Justice DiNoto take issue with, or even acknowledge, the County's multiple, flagrant misstatements of the law, including: (i) its belief that Ferrari's failure to appear entitled it to a missing witness charge; (ii) its astonishing claim that Ferrari had the burden of proving hardship, and needed to do so through his testimony; (iii) its attestation that Ferrari had the burden of "prov[ing] to be a responsible driver in this particular case"; and (iv) its odd interpretation of <u>Krimstock</u> as "<u>dicta</u>."[3]

On June 29, 2010, Ferrari was convicted by guilty plea of all the underlying charges[4]: Driving While Intoxicated (Vehicle and

---

[3] The County also expended considerable effort arguing that, because the car was moveable property, Ferrari could take it to another state. The County did not, however, articulate any cognizable interest in precluding Ferrari from taking the car, temporarily, to say, Connecticut. Nor did it explain why a restraining order (by requiring Ferrari to keep the car in-state), or a bond (by proving financial back-up if Ferrari absconded with the vehicle) could not protect that supposed interest.

[4] In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case <u>sub judice</u>. <u>See</u>, <u>e.g.</u>, <u>Patrowicz v. Transamerica Homefirst, Inc.</u>, 359 F. Supp. 2d 140, 144 (D. Conn. 2005); <u>see also</u> <u>Thomas v. Westchester Cty Health Care Corp.</u>, 232 F. Supp. 2d 273, 276-77 (S.D.N.Y. 2002) (noting that the Court

Traffic Law § 1192.4); Driving While Ability Impaired by Drugs (Vehicle and Traffic Law § 1192.4); Driving While Ability Impaired by the Combined Influence of Drugs or of Alcohol and any Drug or Drugs (Vehicle and Traffic Law § 1192.4-a); and Criminal Possession of a Controlled Substance in the 7th Degree (Penal Law § 220.03). Mot to Dismiss, Ex. G.

On September 16, 2010, Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that his procedural and substantive due process rights were violated by the County of Suffolk, the County Attorney for Suffolk County (Christine Malafi), and John Does 1-10 (who are allegedly responsible for training hearing officers and county attorneys to violate <u>Krimstock</u>'s principles). The Complaint alleges, <u>inter</u> <u>alia</u>, that the Defendants knowingly train, and/or deliberately permit, the hearing officers who preside over post-seizure retention hearings to deliberately and systematically refuse to comport with the due process requirements set out in <u>Krimstock</u> and Suffolk County Code § 270-26. It is claimed that, as a matter of policy and practice, the County was not required at the second retention hearing to meet its "entire burden" of demonstrating whether probable cause existed for Ferrari's arrest, whether the County would likely succeed on the merits in its forfeiture action, whether retention was

---

"may take judicial notice of the records of state administrative procedures, as these are public records").

necessary to prevent the destruction or sale of the vehicle pending the forfeiture proceeding, and whether any less restrictive means existed for protecting the County's interest. Compl., ¶ 42. It is further alleged that Defendants deliberately, willfully, and contumaciously deprived Plaintiff of his rights under <u>Krimstock</u> by requiring him to appear personally at retention hearings and by improperly shifting onto him the burden of showing hardship. <u>Id.</u> at 29, 49.

Defendants' Rule 12(b)(6) motion argues that: (1) Plaintiff does not state a claim for a procedural due process violation against any of the Individual Defendants; (2) Plaintiff does not state a claim for a substantive due process violation against any of the individual Defendants; (3) the <u>Monell</u> claim against the County must be dismissed; and (4) the Individual Defendants are, in any event, entitled to absolute and/or qualified immunity.

DISCUSSION

I. <u>Standard of Review</u>

To overcome a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). Considering such a motion, the Court draws all reasonable inferences in favor of the party against whom dismissal is sought.

See, e.g., Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). At the same time, the Court shall not credit the Complaint's "legal conclusions" or any "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Where the complaint "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility to relief." Id.

## II. Plaintiff's Procedural Due Process Claims

### A. The Appropriate Due Process Standard

In Krimstock v. Kelly, 306 F.3d 40, 67 (2d Cir. 2002), the Second Circuit held that a municipality may properly seize a car pending resolution of a civil forfeiture proceeding only if it affords claimants a "prompt post-seizure, pre-judgment hearing before a neutral judicial or administrative officer." Krimstock then held that, at this hearing, the hearing officer must determine "whether the [municipality] is likely to succeed on the merits of the forfeiture action and whether means short of retention of the vehicle can satisfy the [municipality]'s need to preserve it from destruction or sale during the pendency of proceedings." Id at 67.

It could, however, be argued that Krimstock set forth another way for a municipality to justify retaining a vehicle. Earlier in the decision, Krimstock remarked, in a footnote, that "a

9

claimant's proven history of persistent drunkenness or repeated DWI violations . . . _might_ justify a fact-finder in denying release of the vehicle _pendente_ _lite_." _Id._ at 67 n. 28 (emphasis added). But, as seen above, _Krimstock_ did not ultimately incorporate that footnote, or its reasoning, into its holding.  For it framed the municipality's "need" and "legitimate interests" as "preserv[ing] [the vehicle] from destruction or sale during the pendency of proceedings," not as protecting the public from a habitually intoxicated driver, or precluding the car from being used as an instrumentality in further crimes.  _Id._ at 67-68.  Moreover, _Krimstock_ remanded to the District Court to fashion "appropriate procedural relief." _Id._ at 69.  And, on remand, the District Court did not factor a municipality's interest in furthering public safety into its test.  Instead, it merely required the municipality to prove "whether probable cause existed for the arrest of the vehicle operator; whether it is likely that the City will prevail in an action to forfeit the vehicle, and whether it is necessary that the vehicle remain impounded in order to ensure its availability for a judgment of forfeiture."[5]  Thus, a plain reading of _Krimstock_ does not permit a municipality to retain vehicles for public safety reasons, when such retention is not "necessary" to

---

[5] _See_ _Krimstock v. Kelly_, 99-CV-12041, 2005 U.S. Dist. LEXIS 43845 at *4 (S.D.N.Y. Nov. 29, 2005) (Mukasey, J.), _vac'd_ _on_ _other_ _grounds_ _at_ 464 F.3d 246 (2d Cir. 2006), _on_ _remand_ _at_ 506 F. Supp. 2d 249, 252 (S.D.N.Y. 2007).

protect the municipality's interests in ultimately obtaining the vehicle's forfeiture.[6]

Similar to <u>Krimstock</u>, New York's Court of Appeals has also recognized a potential government interest in protecting society from drunk drivers, but has also failed to incorporate that interest into its standard. In <u>County of Nassau v. Canavan</u>, 1 N.Y. 3d 134, 144, 802 N.E.2d 616 (N.Y. 2003), the Court of Appeals expressly agreed that "retention is a rational means of protecting the public from an increased risk of drunk drivers," though it noted that this interest drops when a defendant has another car at his disposal, because retention "does little to prevent the person from driving another car drunk." But, inexplicably, the Court of Appeals then went on to ignore this recognized government interest in enunciating its standard, instead requiring the municipality to "establish that probable cause existed for the defendant's initial warrantless arrest, that it is likely to succeed on the merits of the forfeiture action, and that retention is necessary to preserve the vehicle from destruction or sale during the pendency of the proceeding," regardless of attendant public safety risks. 1 N.Y. 3d at 144-45.

Suffolk County's applicable Local Law is worded a little

---

[6] The Court expresses no opinion about the merits of <u>Krimstock</u>'s standard. It merely interprets <u>Krimstock</u>'s plain words. Perhaps the Second Circuit should clarify the appropriate standard, if this issue reaches it again.

better. That law, at § 270-26(B)(1), requires "the neutral Magistrate to determine whether probable cause existed for the defendant's warrantless arrest, whether the County is likely to succeed on the merits of the forfeiture action, whether retention is necessary to preserve the vehicle from destruction or sale during the pendency of the forfeiture proceeding, and whether any other measures would better protect the County's interest during the proceedings." Unlike <u>Krimstock</u> and <u>Canavan</u>, the Suffolk County Local Law speaks generally about protecting "the County's interest," without limiting that interest to protecting against destruction or sale. Moreover, in highlighting "other measures" that would protect "the County's interest," the Local Law includes "use of an interlock device," thereby strongly suggesting that the Local Law understands the County's "interest" as being broader than a property interest in the car's value, and extends to protecting the public from continued drunk driving, and/or the car from being used as an instrumentality in the crime of drunk driving.[7]

Suffolk County's (and, for that matter, <u>Canavan</u>'s)

---

[7] New York Vehicle and Traffic Law § 119-a defines an "ignition interlock device" as "[a]ny blood alcohol concentration equivalence measuring device which connects to a motor vehicle ignition system and prevents a motor vehicle from being started without first determining through a deep lung breath sample that the operator's equivalent breath alcohol level does not exceed the calibrated setting on the device as required by section eleven hundred ninety-eight of this chapter." The Court presumes that Suffolk County intended a similar definition for "interlock device."

standards cannot, however, trump the federal due process standards that <u>Krimstock</u> enunciated.   And, as discussed above, <u>Krimstock</u> requires a municipality to show its "need to preserve it from destruction or sale during the pendency of proceedings," regardless of the municipality's additional interest in ensuring public safety.

C.   <u>Does Plaintiff Plead Any Underlying Due Process Violations?</u>

Before addressing whether Suffolk County, or the Individual Defendants, may be held liable, the Court must first answer the threshold question of whether Ferrari pleads any underlying constitutional violations.   <u>See</u>, <u>e.g.</u>, <u>Segal v. City of New York</u>, 459 F.3d 207, 219 (2d Cir. 2006).   Here, the Court is satisfied that Plaintiff has sufficiently pled a violation of the Due Process rules laid down in <u>Krimstock</u>, and codified in Suffolk County Code § 270-26, to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

To begin with, Ferrari pleads that, on June 9, 2009, Justice DiNoto refused to permit the <u>Krimstock</u> hearing to proceed, based on his erroneous belief that Ferrari needed to personally appear and testify. Compl. Ex. A. at 3. Justice DiNoto's decision unnecessarily delayed the hearing for three months. Compl., Ex. A, at 3.   <u>Krimstock</u>, however, held that it was "constitutionally infirm" to deprive a person of property, without a hearing, for "months."   <u>Krimstock</u>, 306 F.3d at 45.   And Justice DiNoto's

misunderstanding of the law is not a legitimate reason to cause such a constitutional infirmity. Accordingly, the Court finds that, at this stage, Ferrari successfully pleads a deprivation of his due process right to a prompt hearing.

Additionally, Ferrari alleges that, at the second hearing: (1) the County's attorney misstated the law by improperly shifting the burden to the Plaintiff, such as by arguing that "Mr. Ferrari needs to testify as to what his hardship is going to be in this particular case. If he is not here to testify, he can't show a hardship; therefore he does have the burden under the [Suffolk County Code] to show hardship and should be present." Compl. ¶ 43; (2) Justice DiNoto did not correct, cure, or demonstrate his disagreement with the County's invalid statements of the law; (3) the County presented no evidence demonstrating why retention of the vehicle--as opposed to the other alternative means found in § 270-26--was necessary, especially given that Plaintiff owned another vehicle, presumably thwarting any effort to keep him off the road through retention; and (4) regardless of whether he had sufficient evidence to do so, Justice DiNoto did not expressly make the requisite finding under <u>Krimstock</u> and § 270-26 that retention of the vehicle was "necessary to preserve the vehicle from destruction or sale during the pendency of the forfeiture proceeding." § 270-

26(B)(1)[8].  In addition to these allegations, the Court notes that the County, bizarrely, argued that <u>Krimstock</u>'s requirements were only "dicta."  Compl. Ex. B at 17; <u>County of Suffolk, New York v. First American Real Estate Solutions</u>, 261 F.3d 179, 184 (2d Cir. 2001) (on motion to dismiss, court may accept as true facts contained in documents "attached, incorporated by reference, or integral to the claims asserted").  And Justice DiNoto expressed no disagreement with that position.  <u>Id.</u>  Ferrari argues that the County's misstatements of law, Justice DiNoto's silence as to those misstatements, and Justice DiNoto's failure to expressly find that retention was "necessary" to preserve the vehicle from destruction or sale, when taken together, amount to a violation of Ferrari's Due Process rights.

The Court agrees.  As discussed above, <u>Krimstock</u> requires the County to prove, by a preponderance of the evidence, that "means short of retention of the vehicle" cannot "satisfy the [County]'s need to preserve it from destruction or sale during the pendency of proceedings."  <u>Id</u> at 67.  Indeed, on remand, the <u>Krimstock</u> District Court framed the inquiry as whether "it is necessary that the vehicle remain impounded in order to ensure its availability for a judgment of forfeiture," a formula that the New

_____

[8] Likewise, even if <u>Krimstock</u> and <u>Canavan</u> do, in fact, permit retention as a means of preventing continued drunk driving, Justice DiNoto made no such findings that retention was appropriate on this ground.

York Court of Appeals then adopted in <u>Canavan</u>.[9]

Here, the County introduced no evidence supporting the <u>Krimstock</u>/<u>Canavan</u> prong. At its strongest, the County argued that Ferrari might damage the vehicle through continued reckless or impaired driving. Compl. Ex. B at 15-16. But the County did not explain why a bond or a restraining order would not adequately protect its financial interest in the vehicle. Indeed, "[a] bond is in some respects a superior form of security because it entails no storage costs or costs of sale." <u>Krimstock</u>, 306 F.3d at 65; <u>see also</u> <u>Boyle v. County of Suffolk</u>, 10-CV-3606, 2010 U.S. Dist. LEXIS 114487, at *14-15 n. 6 (E.D.N.Y. Oct. 19, 2010) (suggesting, as possible ways to meet this burden, introducing evidence "showing that the claimant is unable or unwilling to post a bond, and/or lacks other assets that could be easily restrained").

More charitably, it could be argued that the County sought to apply <u>Krimstock</u>'s <u>dicta</u> suggesting that a municipality can validly impound a vehicle, pre-judgment, to protect public safety. And, in this regard, the County argues now that this is exactly what it sought to prove. Def. Br. at 15-18. For instance, on reply, the County contends that, because Ferrari's alleged

---

[9] <u>See</u> <u>Krimstock</u>, 2005 U.S. Dist. LEXIS 43845 at *4, <u>vac'd</u> <u>on other</u> <u>grounds</u> <u>at</u> 464 F.3d 246, <u>on</u> <u>remand</u> <u>at</u> 506 F. Supp. 2d at 252 (framing the prong, after remand, as whether "it is necessary that the vehicle remain impounded in order to ensure its availability in the eventual civil forfeiture action"); <u>Canavan</u>, 1 N.Y. 3d at 144-45.

16

intoxication resulted from both drugs and alcohol, an interlock ignition device would not have precluded him from driving while impaired again.  Def. Reply Br. at 3.

But, even assuming _arguendo_ that <u>Krimstock</u> permits retention for public safety reasons (when not needed to prevent "destruction or sale"), the County's argument runs into several problems.  First, and principally, Due Process does not just require an impartial hearing, and some oblique discussion of <u>Krimstock</u>'s factors during that hearing by the property owner's counsel.  It requires that the hearing officer "decide those issues by a statement of findings on the record, or by a written statement to be made a matter of record."[10]  Here, Justice DiNoto did not issue an oral or written "statement of findings" that either addressed the third <u>Krimstock</u>/<u>Canavan</u> prong, or concluded that impounding the Ferrari was necessary for public safety reasons. Instead, just as Ferrari alleges, Justice DiNoto limited his "statement of findings" to the first <u>Krimstock</u>/<u>Canavan</u> prong, the

---

[10] <u>Krimstock</u>, 2007 U.S. Dist. LEXIS 82612, at *3 (S.D.N.Y. Sept. 27, 2007) (requiring the presiding judge to "decide those issues by a statement of findings on the record, or by a written statement to be made a matter of record").  The Court notes that this requirement is not particular to <u>Krimstock</u> hearings.  On the contrary, to comport with Due Process, an impartial hearing offer's decision "must rest solely on the legal rules and evidence adduced at the hearing." <u>Goldberg v. Kelly</u>, 397 U.S. 254, 271, 90 S. Ct. 1011, 1022 (1970) (termination of property interest in public assistance).  And, "[t]o demonstrate compliance with this elementary requirement, the decision maker should state the reasons for his determination and indicate the evidence he relied." <u>Id.</u>

existence of probable cause, and then, without finding anything else (not even the second prong, a likelihood of success on the merits), issued a "determination" that "Suffolk County is directed to retain the vehicle pending resolution of a forfeiture proceeding." Compl. Ex. B at 18.

Second, beyond the per se violation stemming from Justice DiNoto's failure to issue a Krimstock-complaint "statement of findings," other Due Process concerns scream out from the face of hearing transcript. Instead of trying to meet its Krimstock/Canavan burden, the County instead spent the hearing enunciating one erroneous legal principle after another, from a bizarre effort to shift the burden, to a nonsensical interpretation of Krimstock as "dicta." And Justice DiNoto never corrected the County, or otherwise expressed his disagreement with the County's flagrantly illogical presentation. On the contrary, the two times Justice DiNoto presented his legal views, he too got the law wrong--first by postponing the hearing based on his incorrect belief that Ferrari needed to appear and testify, and then by issuing findings that failed to address two of Krimstock's and Canavan's three prongs. So, construing the pleadings and exhibits in the light most favorable to Plaintiff, this is not just a case of a judge failing to recite the "magic words" that constitute an applicable legal standard, or a case of a judge neglecting to sufficiently explain his reasons. Instead, given the undisputed record, it is

quite plausible that Justice DiNoto predicated his decision, in whole or in part, on the County's misstatements of law, or his own misunderstanding about what the law requires. And, if Justice DiNoto in fact impounded the Ferrari for these reasons, the court violated Ferrari's due process rights by acting in an arbitrary, capricious or irrational manner. See generally Toney v. Gammon, 79 F.3d 693, 699 (8th Cir. 1996) (a decision based on a judge's "erroneous belie[fs]" regarding the appropriate legal standard violates due process).

A recent Second Circuit decision magnifies the Court's concerns in this area. In Nnebe v. Daus, 2011 WL 1338119, at *11 (2d Cir. Mar. 25, 2011), the Second Circuit addressed whether New York City provides an adequate post-deprivation remedy to suspended taxi drivers. The Second Circuit postulated that the post-deprivation standard on the books "may be well within the range of adequate due process protections." But the Second Circuit found it "troubl[ing]" that this standard "appears to be an oft-quoted nullity that in no way resembles a part of the standard" the supposedly neutral hearing officer actually applies. Id. at *10-11. So to here. The Krimstock standard affords adequate due process. But Ferrari successfully pleads that the County has a pattern and practice of not applying Krimstock, because its neutral hearing officers routinely only require the County to show "probable cause," thereby ignoring the "necessary" prong.

19

Finally, even if the Court could interpret Krimstock's public safety footnote as part of its holding, and even if the Court could somehow overlook Justice DiNoto's and the County's glaring errors, and could instead, on a motion to dismiss, somehow conduct some kind of "harmless error" review, the Court could not find that the multiple errors here were harmless. It is, in fact, a close call as to whether the County met its (arguable) burden in showing that impoundment was "justif[ied]" based on Ferrari's "proven history of persistent drunkenness or repeated DWI violations." Krimstock, 306 F.3d at 66 n. 28.

In the County's favor, it adduced evidence supporting that Ferrari had a previous DWI conviction, and several license suspensions or revocations. Additionally, as the County argues on reply (but did not expressly argue at the hearing, in its initial motion papers), Ferrari's underlying arrest involved impairment from both alcohol and prescription medication, along with possession of crack cocaine. So, even if an interlock device (breathalyser) could shield the public from further drunk driving, it would not protect against Ferrari driving under the influence of other substances.

But Ferrari also makes a strong case. Namely, as the County itself pointed out, his Ferrari was not his only car. He also owns a Land Rover that is "able to be used" by him. Compl. Ex. B. at 11. And Ferrari's ability to drive another car

20

significantly weakens the County's interest in the "remedy of continued impoundment." <u>Krimstock</u>, 306 F.3d at 66; <u>Canavan</u>, 1 N.Y.3d at 144 ("while retention of a car indeed prevents a defendant from again driving that particular car drunk, it does little to prevent the person from driving another car drunk"). Indeed, if impounding his Ferrari causes Ferrari to instead drive his Land Rover, impoundment might actually <u>undermine</u> the County's interest in protecting public safety. After all, holding other factors equal, the basic "laws of physics" dictate that the much larger, much heavier Land Rover would do much greater damage in a collision than the lighter, smaller Ferrari.[11] Thus, though impoundment certainly deprived Ferrari of a substantial property interest, it is unclear if it furthered any cognizable municipal interest.

Had Justice DiNoto made or articulated findings resolving this close question, the Court would afford those findings substantial deference. But, as he did not, the Court cannot resolve this dilemma in the County's favor under Rule 12(b)(6).

---

[11] <u>See</u> <u>generally</u> http://www.iihs.org/news/rss/pr041409.html (last visited April 15, 2011) ("Size and weight affect injury likelihood in all kinds of crashes. In a collision involving two vehicles that differ in size and weight, the people in the smaller, lighter vehicle will be at a disadvantage. The bigger, heavier vehicle will push the smaller, lighter one backward during the impact. This means there will be less force on the occupants of the heavier vehicle and more on the people in the lighter vehicle. Greater force means greater risk, so the likelihood of injury goes up in the smaller, lighter vehicle.")

Considering all these factors, the Court finds that Ferrari's Complaint pleads underlying violations of both procedural and substantive due process. With respect to procedural due process, Ferrari alleges that: (i) the inexplicable three-month hearing postponement deprived him of his right to a "prompt" <u>Krimstock</u> hearing; (ii) in violation of <u>Krimstock</u>, the County failed to establish, by a preponderance of the evidence, that retention was to prevent the car's destruction or sale; and (iii) Justice DiNoto failed to make "a statement of findings" covering two of <u>Krimstock</u>'s three prongs. And, with respect to substantive due process, Ferrari successfully pleads that the County obtained impoundment because Justice DiNoto failed to apply settled law, and instead may have relied on the County's multiple, egregious misstatements of the law. <u>See</u> <u>generally</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986) (substantive due process covers "arbitrary" or "conscience-shocking" government actions).[12]

---

[12] Defendants also argue that Ferrari's substantive due process claim fails because "a claim based on the seizure of his car . . . must be raised as a Fourth Amendment claim," citing the well-established principle that, when an plaintiff "alleges a cause of action protected by an 'explicit textual source' of the Constitution, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing' the claim." Def. Br. at 18 (citing <u>Kaluczky v. City of White Plains</u>, 57 F.3d 202, 211 (2d Cir. 1995)). But Defendants are wrong. When a government "seize[s] property not to preserve evidence of wrongdoing, but to assert ownership and control over the property itself," such as when it seeks "forfeiture," the Due Process clauses of the Fifth and Fourteenth Amendments control. <u>United</u>

C.    <u>Monell Liability</u>

Having pled underlying violations, the question thus turns to whether Ferrari has successfully pled the County's liability for those violations.  To properly plead a Section 1983 claim against a municipality, Plaintiff must also allege three separate elements: (1) an official custom or policy that (2) subjected the Plaintiff to (3) a denial of a constitutional right. <u>See</u> <u>Hartline v. Gallo</u>, 546 F.3d 95, 103 (2d Cir. 2008); <u>Zahra v. Southold</u>, 48 F.3d 674, 685 (2d Cir. 1995); <u>Batista v. Rodriquez</u>, 702 F.2d 393, 397 (2d Cir. 1983); <u>see also</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1977).

It is quite clear that this is exactly what Plaintiff has done here.  In this regard, Ferrari alleges that Suffolk County "knowingly train[s] and/or deliberately permit[s], the hearing officers who 'preside' over retention hearings to deliberately and systematically refuse to comport with the requirements of Due Process or the Suffolk County Code."  Compl. ¶ 19.  And, although Ferrari does not plead much factual detail concerning Suffolk County's training programs, "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage."  <u>Amnesty</u>

---

<u>States v. James Daniel Good Real Property</u>, 510 U.S. 43, 51-52, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993).

America v. Town of West Hartford, 361 F.3d 113, 130 n. 10 (2d Cir. 2004). Thus, a plaintiff "need only plead that the city's failure to train caused the constitutional violation," in order to plead municipal liability. Id.; Michael v. County of Nassau, 2010 U.S. Dist. LEXIS 82764, at *11 n.3 (E.D.N.Y. Aug. 11, 2010) (noting that the Iqbal/Twombly standard is "context-specific," and that a plaintiff has "no realistic way to learn about a municipality's training programs without discovery"); Williams v. City of New York, 690 F. Supp. 2d 338, 344 (S.D.N.Y. 2010) (continuing to apply Amnesty America's lenient pleading standard, post-Iqbal and Twombly).

Additionally, Plaintiff alleges more than just a failure to train. He also alleges that Suffolk County "deliberately permit[s]" its hearing officers to violate Krimstock. In so doing, Plaintiff pleads that Justice DiNoto's actions subjected Suffolk County to municipal liability by conforming to "a widespread practice that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware." Yang Feng Zhao v. City of New York, 656 F. Supp. 2d 375, 392 (S.D.N.Y. 2009). And this allegation is not conclusory. On the contrary, Plaintiff augments this allegation by identifying, without the benefit of discovery, two other instances in which Suffolk County's supposedly neutral hearing officers failed to properly apply Krimstock. See Sullivan v. County of Suffolk, 04-

24

CV-3651 (E.D.N.Y.) (referenced in Compl. ¶¶ 24-27); <u>Boyle</u>, 2010
U.S. Dist. LEXIS 114487 (referenced in briefs, and subject to
judicial notice).   Three instances (including Plaintiff's own
claim) might not suffice to overcome summary judgment.  But, at
this stage, they do permit a plausible inference of a widespread
practice or informal custom within Suffolk County.[13]

Accordingly, Defendants' motion is DENIED with respect to
Suffolk County.

B.  <u>Claims Against Individual Defendants</u>

The Complaint alleges that Chistine Malafi, the County
Attorney for Suffolk County, in her individual capacity, together
with the County and John Does 1-10, has "intentionally and
willfully continued [her] campaign to violate the rights of those
whose cars have been seized by requiring owners to appear
personally for retention hearings and by improperly shifting the
burden of continued retention to the owner to show hardship or some
other necessity."  Compl. ¶ 29.  Yet the Complaint's sole purported
fact in support this allegation is that Malafi was "emboldened by
the mere one dollar award" the County paid to a plaintiff who made

_____

[13] Additionally, the Court notes, without taking any position,
that "a single unconstitutional act or decision, when taken by an
authorized decision-maker, may be considered policy and thus
subject a municipality to liability."  <u>Sulehria v. City of New
York</u>, 670 F. Supp. 2d 288, 320 (S.D.N.Y. 2009).  Ferrari does
not, however, expressly plead that Suffolk County vested Justice
DiNoto with policy making authority, and the parties did not
brief such a theory.

similar Due Process Clause allegations in <u>Sullivan</u>. Plaintiff pleads no substantive factual allegations that link Malafi's personal conduct to the deprivations complained of. Consequently, as to Malafi, Plaintiff's claim "stops short of the line between possibility and plausibility to relief." <u>Iqbal</u>, 129 S. Ct. at 1949.

As for Defendants John Does 1-10, they do not even rate a single complete sentence in the Complaint, apart from a glancing reference to their inadequate "training" of the County's hearing officers. <u>See</u> Compl. ¶ 30. The problem is not so much that they are not identified as it is that none of their characteristics, actions, motivations, positions, or specific roles in the alleged violations are hinted at in even the most speculative fashion.

These defects are, however, potentially curable. Consequently, although the Complaint's claims against the Individual Defendants are DISMISSED, this dismissal is without prejudice. Plaintiff is free to seek the Court's leave to replead his claims against these Defendants, either now or upon obtaining new information during discovery.

<u>CONCLUSION</u>

Ferrari is not the most sympathetic plaintiff, to put it mildly. But the Due Process clause protects everyone--even repeated drunk drivers. Here, Ferrari has adequately pled that Suffolk County violated his Due Process rights. Consequently,

Defendants' motion to dismiss is DENIED insofar as it seeks to dismiss the claims against Suffolk County.

Ferrari has not, however, pled sufficient facts to properly allege that the Individual Defendants violated his rights. Consequently, Defendants' motion to dismiss is GRANTED insofar as it seeks to dismiss the claims against the Individual Defendants.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     June   7  , 2011
           Central Islip, New York