UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
JAMES B. FERRARI,

                    Plaintiff,

                                        MEMORANDUM & ORDER
          -against-                     10-CV-4218(JS)(GRB)

COUNTY OF SUFFOLK,

                    Defendant.
--------------------------------------X
APPEARANCES
For Plaintiff:      Andrew J. Campanelli, Esq.
                    David Antwork, Esq.
                    Campanelli & Associates, P.C.
                    1757 Merrick Avenue, Suite 204
                    Merrick, NY 11566

For Defendant:      Christopher M. Gatto, Esq.
                    Suffolk County Attorney's Office
                    H. Lee Dennison Building, 5th Floor
                    100 Veterans Memorial Highway
                    Hauppauge, NY 11788

SEYBERT, District Judge:

        On September 16, 2010, Plaintiff James B. Ferrari

("Plaintiff") commenced this action asserting claims under 42

U.S.C. § 1983 arising out of Suffolk County's seizure of his

vehicle after he was arrested for driving while intoxicated.

Pending before the Court are cross-motions for summary judgment

filed by Plaintiff and Defendant Suffolk County (the "County").

For the following reasons, both motions are GRANTED IN PART and

DENIED IN PART.

BACKGROUND

I.   Legal Framework: Krimstock & its Progeny

In Krimstock v. Kelly, 306 F.3d 40 (2d Cir. 2002) ("Krimstock I"), the Second Circuit held that, although the police can temporarily seize a vehicle while arresting a drunk driver, the municipality cannot indefinitely hold the vehicle pending resolution of a civil forfeiture proceeding.  Instead, the Second Circuit found that "the Fourteenth Amendment guarantee that deprivations of property be accomplished only with due process of law requires that plaintiffs be afforded a prompt post-seizure, pre-judgment hearing before a neutral judicial or administrative officer."  Id. at 67.  The Circuit "declin[ed] to dictate a specific form for the prompt retention hearing," but held that "at a minimum, the hearing must enable claimants to test the probable validity of continued deprivation of their vehicles, including the [municipality]'s probable cause for the initial warrantless seizure" and "whether less drastic measures than impoundment, such as a bond or a restraining order, would protect the [municipality]'s interest in the allegedly forfeitable vehicle during the pendency of proceedings."  Id. at 69-70.  The Circuit, in a footnote, also stated that "[a] claimant's proven history of persistent drunkenness or repeated DWI violations . . . might justify a fact-finder in denying release of the vehicle pendente

lite." Id. at 66 n.28. The case was remanded to the district court to "fashion[] appropriate relief." Id. at 70.

On remand, the district court concluded that due process requires that, at a post-seizure hearing, the municipality prove by a preponderance of the evidence that: (1) "probable cause existed for the arrest of the vehicle operator," (2) "it is likely that the [municipality] will prevail in an action to forfeit the vehicle," and (3) "it is necessary that the vehicle remain impounded in order to ensure its availability for a judgment of forfeiture." Krimstock v. Kelly, No. 99-CV-12041, 2007 U.S. Dist. LEXIS 82612, at *2 (S.D.N.Y. Sept. 27. 2007).[1] A neutral magistrate must "decide those issues by a statement of findings on the record, or by a written statement to be made a matter of record." Krimstock, 2005 U.S. Dist. LEXIS 43845, at *4; accord Krimstock, 2007 U.S. Dist. LEXIS 82612, at *3. If the municipality fails to meet its burden on any of the three Krimstock elements, the vehicle

_____

[1] There were actually multiple orders issued by the district court on remand. The decision cited above is the "Third Amended Order & Judgment." The quoted language in the Third Amended Order & Judgment is identical to the language in a prior, unpublished order that was affirmed in relevant part on appeal. See Jones v. Kelly, 378 F.3d 198, 204 (2d Cir. 2004) (stating that it "affirm[s] the district court's order as it relates to cars held for forfeiture").

A detailed summary of Krimstock's relevant procedure history can be found in Krimstock v. Kelly, 506 F. Supp. 2d 249, 251-53 (S.D.N.Y. 2007).

must be returned.  See Krimstock, 2005 U.S. Dist. LEXIS 43845, at *6-7; Krimstock, 2007 U.S. Dist. LEXIS 82612, at *3.

Shortly after Krimstock I was decided, the New York Court of Appeals took up the issue and also concluded that due process requires "a prompt post-seizure retention hearing" where the municipality must "establish that probable cause existed for the defendant's initial warrantless arrest, that it is likely to succeed on the merits of the forfeiture action, and that retention is necessary to preserve the vehicle from destruction or sale during the pendency of the proceeding."  Cnty. of Nassau v. Canavan, 1 N.Y.3d 134, 144-45, 770 N.Y.S.2d 277, 286, 802 N.E.2d 616, 625 (2003).

Courts in New York have consistently looked to the three requirements articulated in both the Krimstock line of cases and Canavan when analyzing whether a post-seizure vehicle retention hearing comports with due process, see, e.g., Boyle v. Cnty. of Suffolk, No. 10-CV-3606, 2010 WL 4340627, at *2 (E.D.N.Y. Oct. 19, 2010); Price v. Prop. Clerk of N.Y.C. Police Dep't, 74 A.D.3d 1078, 1079, 903 N.Y.S.2d 142, 144 (2d Dep't 2010), and the Krimstock standard has been incorporated into the Suffolk County Administrative Code, which states, in relevant part, as follows:

> [T]here will be a hearing promptly scheduled
> before a neutral magistrate to determine
> whether probable cause existed for the
> defendant's warrantless arrest, whether the
> County is likely to succeed on the merits of

the forfeiture action, whether retention is
necessary to preserve the vehicle from
destruction or sale during the pendency of the
forfeiture proceeding, and whether any other
measures would better protect the County's
interest during the proceedings, including,
but not limited to:

>  (a) Issuance of a restraining order
>  prohibiting the sale, transfer, or
>  loss of the vehicle with
>  imposition(s) of appropriate
>  penalties for violation of said
>  restraining order;
>
>  (b) Taking of a bond; and/or
>
>  (c) Use of an interlock device.

(Gatto Decl. Ex. R.)[2]

## II.  Factual Background[3]

On May 26, 2009, Plaintiff was arrested after being

pulled over for driving under the influence of drugs and/or

alcohol.  (Cnty. 56.1 Stmt. ¶ 4; Gatto Decl. Ex. B.)  He was

subsequently indicted and formally charged with driving while

intoxicated in violation of N.Y. VEH. & TRAF. LAW § 1192.3, driving

---

[2] The County has provided the Court with a copy of Section 270-26
of the Suffolk County Administrative Code--which was the
relevant section of the Code at the time this action was
commenced.  The Code, however, was completely overhauled in
2011, and Section 270-26 is now Section 420-6.  See
http://ecode360.com/print/SU0867?guid=14958241&children=true.
The language of the current Section 420-6, available at
http://ecode360.com/14945224, is identical to the prior version
of Section 270-26 provided by the County.

[3] The following facts are drawn from the parties Local Rule 56.1
Statements ("56.1 Stmt.") and the exhibits attached thereto and
submitted therewith.  The facts are largely undisputed.

while impaired by drugs in violation of N.Y. VEH. & TRAF. LAW §
1192.4, driving while impaired by the combined influence of drugs
and alcohol in violation of N.Y. VEH. & TRAF. LAW § 1192.4-a, and
criminal possession of a controlled substance in the seventh degree
in violation of N.Y. PENAL LAW § 220.03. (Gatto Decl. Ex. I; Cnty.
56.1 Stmt. ¶ 5.) Upon his arrest, the 2003 Ferrari that he was
driving was temporarily impounded pending a post-seizure retention
hearing. (Cnty. 56.1 Stmt. ¶ 6; Gatto Decl. Ex. F.)

Plaintiff received a Notice of Seizure and Hearing,
dated May 28, 2009, scheduling a retention hearing for June 9,
2009. (Cnty. 56.1 Stmt. ¶ 6, Pl. 56.1 Stmt. Ex. A.) At the
hearing, which took place before now-retired Justice John DiNoto,
Assistant County Attorney Kelly Green, Esq. represented the County
and Andrew J. Campanelli, Esq. (Plaintiff's counsel in the present
action) represented Plaintiff. (Pl. 56.1 Stmt. Ex. A, at 2.) At
the hearing, the following colloquy between Mr. Campanelli and
Justice DiNoto took place after Mr. Campanelli informed the court
that Plaintiff would not be attending:

> THE COURT: Where is he?
>
> MR. CAMPANELLI: He will not be attending the
> hearing, Your Honor.
>
> THE COURT: Oh, yes, he will. I am not going
> to conduct a hearing without him here.
>
> MR. CAMPANELLI: I am here as his counsel. He
> has consented to my appearing on his behalf.

I don't think he is required to testify at his
own hearing, [Y]our Honor.

THE COURT:  As far as I am concerned, he is.
Credibility is a big issue in any trial, and
there may be a determination with respect to
the issues that have to be addressed by
Counsel asking questions of the Witness--a lot
different th[a]n having him subject to cross-
examination by the County Attorney.  It is a
lot different than having hearsay testimony
from you.

MR. CAMPANELLI:  I don't intend to offer any
testimony, Your Honor.

(Id. at 3-4.)  Mr. Campanelli then correctly explained that,
pursuant to Krimstock, the County--not the Plaintiff--bore the
burden of establishing the necessity of retention.  (Id. at 4-5.)
When Justice DiNoto asked for Ms. Green's response, she asserted
that "[her] understanding of the Krimstock [sic] is entirely
different th[a]n Counsel's" (id. at 10), and, even though she was
prepared to conduct a Krimstock hearing that morning, she asked
for time to conduct research on Mr. Campanelli's argument--i.e.,
the appropriate burden of proof at the hearing (id. at 11 ("Your
Honor, I need time.")).   Notwithstanding Ms. Green's request,
Justice DiNoto interpreted Mr. Campanelli's request as a motion
to proceed without Plaintiff and denied the motion.  (Id. at 6-7,
12.)  The hearing was adjourned to September 1, 2009.  (Cnty. 56.1
Stmt. ¶ 8.)

        The parties appeared before Judge DiNoto on September 1,
2009.  Ms. Green represented the County, and Charles Martin, Esq.

7

of Campanelli & Associates represented Plaintiff.  (Pl. 56.1 Stmt.
Ex. B, at 2-3.)  Plaintiff did not personally appear, and the issue
of whether Plaintiff was required to appear was again raised.  Ms.
Green incorrectly asserted that Plaintiff "should be present"
because he "ha[s] the burden under the statute to show hardship."
(Id. at 6.)  She believed that his failure to appear entitled her
to a missing witness charge.  Nonetheless, she conceded that she
was willing to move forward with the hearing without him.  (Id. at
7.)  Ms. Green did not call any witnesses.  Instead, the parties
stipulated to the admission of the following documentary evidence:
(1) the felony complaint (Gatto Decl. Ex. B)[4]; (2) a "Drug/Alcohol
Influence Report" which revealed that Plaintiff refused to submit
to a chemical test (Gatto Decl. Ex. C); (3) a certificate of
disposition for a 2007 conviction for driving while intoxicated
(Gatto Decl. Ex. D)[5]; (4) his Abstract Driving Record, which

---

[4] According to the Felony Complaint, a Suffolk County police
officer observed Plaintiff driving at a speed in excess of 100
miles per hour and crossing the double yellow line on multiple
occasions.  (Gatto Decl. Ex. B.)  The officer pulled Plaintiff
over and, upon interviewing him, noted that he smelled strongly
of alcohol, his eyes were bloodshot, his speech was slurred, and
his gait was unsteady.  (Id.)  Plaintiff admitted to the officer
that he had consumed alcohol prior to driving, that he was also
taking thirteen prescribed medications for blood pressure and
anxiety disorder, and that a crack pipe found in the vehicle was
his.  (Id.)  Crack cocaine was also found in his possession upon
arrest.  (Id.)

[5] Plaintiff was arrested on January 13, 2006, pled guilty on
April 26, 2007, and was sentenced on June 6, 2007 to a

revealed that Plaintiff had also been convicted of driving while impaired in 2005 and that his license had been suspended and revoked on multiple occasions (Gatto Decl. Ex. D; Cnty. 56.1 Stmt. ¶ 9); (5) Plaintiff's title and registration records for the Ferrari he was driving at the time of arrest, which revealed that he was the owner of the vehicle (Gatto Decl. Ex. E); (6) the May 28, 2009 Notice of Seizure and Hearing (Gatto Decl. Ex. F); and (7) a printout from the Department of Motor Vehicles revealing that Plaintiff also had a 2003 Land Rover registered in his name (Gatto Decl. Ex. G; Cnty. 56.1 Stmt. ¶ 9). Mr. Martin did not present any evidence.

After resting, but before summation, Ms. Green asserted that because Plaintiff owned another vehicle, the Land Rover, he could not establish "hardship" from the retention of his Ferrari. (Pl. 56.1 Stmt. Ex. B, at 10-11.)

On summation, Mr. Martin argued that, because the County adduced no evidence that the Ferrari would be moved out of the state, destroyed, or sold, the car could not be impounded pursuant to Krimstock. (Id. at 12-14.) Ms. Green then argued that: (1) there was probable cause for the stop and arrest based on the arresting officer's observations of Plaintiff's erratic driving and Plaintiff's admission that he owned the crack pipe found in

conditional discharge of one year and a suspension of his license for six months. (Gatto Decl. Ex. D.)

the vehicle (id. at 14-15); (2) "based on his driving record . . .
a bond, a restraining order, or any of the other means available
to [the County], in this particular case, would not maintain th[e]
vehicle in the manner and in the form that it was taken when it
was seized" (id. at 15, 16); and (3) "there's obviously a problem
with Mr. Ferrari" who "has not proven to be a responsible driver
in this particular case" (id. at 16).  With respect to Krimstock,
Ms. Green argued that it was "dicta," and thus inapplicable,
because "there is no le[i]nholder in this particular case."  (Id.
at 17.)  She also added, however, that the County had sustained
the burden imposed by Krimstock:

> As to the burden in the case, yes, it talks to
> the County to make that burden, but the County
> has sustained that burden and there is nothing
> to refute it by Mr. Ferrari or his attorney in
> testimony form or evidentiary form to allow
> this Court to determine that the County should
> not retain it any further.

(Id.)

After the parties' summations, Justice DiNoto ruled as
follows:

> After a hearing and based on the credible
> evidence adduced at the hearing, I find
> firstly that there was, in fact, probable
> cause for the stop and arrest in this case.
> The second part of my determination is that
> Suffolk County is directed to retain the
> vehicle pending resolution of the forfeiture
> proceeding.

(Id. at 18.) Justice DiNoto's written determination stated, in its entirety, that "Suffolk County is directed to retain the vehicle pending resolution of a forfeiture proceeding . . . [because] probable cause for the stop & arrest has been shown by the evidence." (Pl. 56.1 Stmt. Ex. C.)

That same day, the County commenced a forfeiture action for the Ferrari (Gatto Decl. Ex. K); on June 29, 2010, Plaintiff was convicted, by a plea of guilty, of all the underlying charges (Cnty. 56.1 Stmt. ¶ 17); and on June 1, 2012, Plaintiff surrendered title to the Ferrari pursuant to a Stipulation of Settlement in the forfeiture action (Cnty. 56.1 Stmt. ¶ 16; Gatto Decl. Ex. M).

III. Procedural History

Plaintiff commenced this action on September 16, 2010, asserting claims against the County, the Suffolk County Attorney, Christine Malafi, and John Does 1-10 (the individuals allegedly responsible for training hearing officers and assistant county attorneys) under 42 U.S.C. § 1983 for violation of his procedural and substantive due process rights as articulated in Krimstock. On November 4, 2010, Defendants moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

On June 7, 2011, the Court issued a Memorandum and Order, granting in part and denying in part Defendants' motion to dismiss. Ferrari v. Cnty. of Suffolk, 790 F. Supp. 2d 34 (E.D.N.Y. 2011)

(Docket Entry 14).  The Court granted the motion to the extent
that it sought dismissal of the claims against Ms. Malafi and the
John Doe defendants because the Complaint failed to plead their
individual involvement in the alleged constitutional violations.
Id. at 46.  The Court denied the motion to the extent that it
sought dismissal of the claims against the County, finding that
the  Complaint  sufficiently  pled  violations  of  Plaintiff's
substantive and procedural due process rights.  Specifically, the
Court  made  the  following  findings  with  respect  to  Plaintiff's
procedural due process claims as pled: (1) Justice DiNoto's refusal
to conduct the hearing on June 9 "based on his erroneous belief
that  Ferrari  needed  to  personally  appear  and  testify[,]  .  .  .
unnecessarily delayed the hearing for three months" in violation
of Plaintiff's due process right to a prompt hearing, id. at 41
(stating that it is "'constitutionally infirm' to deprive a person
of property, without a hearing, for 'months'" (quoting Krimstock,
306 F.3d at 45)); (2) "in violation of Krimstock, the County failed
to establish by a preponderance of the evidence, that retention
was to prevent the car's destruction or sale," id. at 45; see also
id. at 42 (finding that the County failed to introduce any evidence
to  show  why  a  bond  or  restraining  order  would  not  adequately
protect its financial interest in the vehicle, such as evidence
that Plaintiff "is unable or unwilling to post a bond, and/or lacks
other assets that could be easily restrained" (quoting Boyle, 2010

12

WL 4340627, at *4 n.6)); and (3) notwithstanding Krimstock's requirement that the hearing officer "decide [the Krimstock factors] by a statement of findings on the record, or by a written statement to be made a matter of record," Krimstock, 2007 U.S. Dist. LEXIS 82612, at *3, Justice DiNoto failed to make a statement of findings as to two of Krimstock's three prongs, Ferrari, 790 F. Supp. 2d at 43, 45. In so finding, the Court rejected the County's argument that the footnote in Krimstock I, which suggests that a municipality may validly retain a vehicle pre-judgment for public safety reasons, was anything more than dicta, as it was not included in Krimstock I's holding nor was it included in any of the decisions of the district court on remand. Id. at 40 ("[A] plain reading of Krimstock does not permit a municipality to retain vehicles for public safety reasons, when such retention is not 'necessary' to protect the municipality's interest in ultimately obtaining the vehicle's forfeiture."). The Court also found that Plaintiff had successfully pled a substantive due process violation because Justice DiNoto failed to apply settled law and instead relied on the County's "multiple, egregious misstatements of law," stating that a decision based on a judge's erroneous beliefs regarding the appropriate legal standard violates due process. Id. at 43, 45. Finally, the Court found that Plaintiff had adequately pled the County's liability. Id. at 45-46.

On November 26, 2012, the County filed a motion for summary judgment (Docket Entry 51). On December 10, 2012, Plaintiff cross-moved for summary judgment solely on the issue of liability (Docket Entry 54).[6] In support of his motion, Plaintiff provided transcripts from eleven other retention hearings that took place in Suffolk County between April 2007 and September 2010, as well as four written determinations from hearing officers. (Pl. 56.1 Stmt. Exs. D-R.)[7] These motions are presently pending before the Court.

## DISCUSSION

The Court will first discuss the applicable standard of review before addressing the merits of the parties' motions.

---

[6] Plaintiff moved solely on the issue of liability, notwithstanding counsel's assertion at the October 5, 2012 pre-motion conference that Plaintiff would be moving on both damages and liability.

[7] The County objects to the admissibility of these exhibits pursuant to Rule 37(c) of the Federal Rules of Civil Procedure on the grounds that Plaintiff failed to disclose them during the course of discovery. There are two issues with the County's argument. First, the Court may take judicial notice of the transcripts and judicial determinations. See Pelosi v. Spota, 607 F. Supp. 2d 366, 371 (E.D.N.Y. 2009) (citing Global Network Comm'cns, Inc. v. City of N.Y., 458 F.3d 150, 157 (2d Cir. 2006)). Second, "discovery need not be required of documents of public record which are equally accessible to all parties." See, e.g., Krause v. Buffalo & Erie Cnty. Workforce Dev. Consortium, Inc., 426 F. Supp. 2d 68, 90 (W.D.N.Y. 2005). Therefore, Plaintiff was not required to produce the transcripts, and thus there is no basis for preclusion under Rule 37(c). See, e.g., Bey v. City of N.Y., No. 99-CV-3873, 2010 WL 3910231, at *4 (S.D.N.Y. Sept. 21, 2010).

I.   Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment."  Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).  A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256).  "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome

a motion for summary judgment.  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

        "The same standard applies where, as here, the parties filed cross-motions for summary judgment . . . ." See Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citing Terwilliger v. Terwilliger, 206 F.3d 240, 244 (2d Cir. 2000)). Thus, even if both parties move for summary judgment and assert the absence of any genuine issues of material fact, "a district court is not required to grant judgment as a matter of law for one side or the other."  Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993).  "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  Morales, 249 F.3d at 121 (citation omitted).

        Here, however, as none of the material facts are in dispute and the parties' arguments in support of and opposing summary judgment are identical, rather than address each motion separately, the Court will instead discuss the merits of the parties' arguments in their moving and opposition briefs one claim at a time.

II.  Analysis

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983, which provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983.  Thus, to prevail on a claim under Section 1983, a plaintiff must establish that: (1) the defendant acted under color of state law and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of his or her rights or privileges as secured by the Constitution or laws of the United States.  See Am. Mfr. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50, 119 S. Ct. 977, 985, 143 L. Ed. 2d 130, 143 (1999).  For a municipality to be held liable under Section 1983, a plaintiff must further demonstrate that the constitutional violation complained of was caused by a municipal "policy or custom." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  The Court will address the parties' arguments regarding the alleged constitutional violations and the County's liability under Monell separately.

17

A.  Alleged Constitutional Violations

"It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere."  Morris-Hayes v. Bd. of Educ., 423 F.3d 153, 159 (2d Cir. 2005).  Here, the Plaintiff asserts that his rights to procedural and substantive due process, as protected by the Fourteenth Amendment, were violated.

1.  Procedural Due Process Claim

To prevail on a procedural due process claim, Plaintiff must show that he: (1) had a "protected liberty or property interest" and (2) was "deprived of that interest without due process."  McMenemy v. City of Rochester, 241 F.3d 279, 286 (2d Cir. 2001).  Here, it is undisputed that Plaintiff had a protected property interest in his Ferrari.  At issue is whether he was afforded adequate process.

Notwithstanding the Court's prior Memorandum and Order, which explicitly held that the unnecessary delay, Ms. Green's failure to establish by a preponderance of the evidence that retention was necessary, and Justice DiNoto's failure to make findings on the record regarding Krimstock's second and third prongs all constitute violations of Plaintiff's right to procedural due process, the County argues that it is entitled to summary judgment on this claim.  The County makes basically two arguments--neither of which is of any merit.

First, the County argues that there was no procedural due process violation because Ms. Green "in essence argued" that it was necessary to retain the vehicle to preserve the County's interest. (Cnty. Mot. 5.) The Court disagrees. Although Ms. Green did state at the hearing that she believed that, due to Plaintiff's driving record, vehicle retention was necessary to ensure its availability for a judgment of forfeiture (see Pl. 56.1 Stmt. Ex. B, at 15-16), "the County's burden was to establish that it was 'necessary' to retain [Plaintiff]'s car by a preponderance of the evidence, not a preponderance of attorney argument." Boyle, 2010 WL 4340627, at *4. As the Court stated in its prior Memorandum and Order, the County failed to introduce any evidence regarding the necessity of retention, Ferrari, 790 F. Supp. 2d at 42, "[a]nd attorney argument is not evidence," Boyle, 2010 WL 4340627, at *4 (finding that the County's "conclusory argument" that the stipulated exhibits concerning the plaintiff's likely guilt, his previous conviction, and his ownership of the car established that retention was necessary was insufficient to satisfy due process).[8]

---

[8] The County attempts to distinguish Boyle by arguing that the circumstances surrounding the arrest in Boyle were less egregious than the circumstances here--i.e., Boyle was only charged with misdemeanor offenses and had a less extensive criminal history than Plaintiff. However, as the Court stated above, such evidence supports a finding of probable cause for arrest, not necessarily a finding that retention was necessary to preserve the County's interest in the vehicle. The County must establish by a preponderance of the evidence that "less drastic measures than continued impoundment, such as a bond or a

Second, the County argues that Plaintiff's "failure to avail himself of State procedural remedies such as an Article 78 proceeding to challenge the post-seizure determination" precludes his procedural due process claim. (Cnty. Mot. 18.)  The Court disagrees.  Although the Second Circuit has held that an Article 78 proceeding generally satisfies due process "if the deprivation is caused by random, unauthorized state conduct," Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev., 959 F.2d 395, 404 (2d Cir. 1992) (citing Parratt v. Taylor, 451 U.S. 527, 543, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981); Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)), an Article 78 proceeding is not sufficient where "it is the state system itself that destroys a complainant's property interest, by operation of law," Logan v. Zimmerman Brush Co., 455 U.S. 422, 436, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982); see also Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 880 (2d Cir. 1996) ("When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the

_____

restraining order," would not protect its interest in the vehicle during the pendency of the proceedings.  Krimstock I, 306 F.3d at 70.  That Plaintiff, due to his driving record, was arguably more likely to damage his vehicle than the plaintiff in Boyle, does not speak to whether a less severe alternative, such as an interlock device, was available.  No evidence as to the availability of alternatives to retention was presented in either case, and, for that reason, the Court finds that Boyle is directly on point.

availability of postdeprivation procedures will not, ipso facto, satisfy due process."); Van Oss v. New York, 783 F. Supp. 2d 681, 695 (S.D.N.Y. 2011) ("[W]here the deprivation is systemic, litigants have a well-established right to pursue their claims in federal court without resorting to state judicial remedies.").

In the present case, the issue is not whether Justice DiNoto was a lone judge who randomly misapplied the law or whether Assistant County Attorney Green arbitrarily attempted to shift the burden to Plaintiff. If this were the case, the County's argument that the availability of a state remedy bars any due process claim would be much stronger. Rather, the issue is whether the County's procedures for vehicle retention hearings, in fact, ignore Krimstock and the Suffolk County Administrative Code. See Ferrari, 790 F. Supp. 2d at 44 (framing the issue as whether "the County has a pattern and practice of not applying Krimstock, because its neutral hearing officers routinely only require the County to show 'probable cause,' thereby ignoring the 'necessity' prong"); cf. Nnebe v. Daus, 644 F.3d 147, 160 (2d Cir. 2011) (remanding an action regarding the adequacy of post-deprivation hearings for suspended taxi drivers to the district court to develop the record because, although the official standard for the hearings "may well be within the range of adequate due process protections," that standard "appears to be an oft-quoted nullity that in no way resembles a part of the standard" actually applied). Because the

deprivation here is allegedly systemic, and not random, the availability of an Article 78 proceeding does not bar Plaintiff's claim.  Cf. Boyle, 2010 WL 4340627, at *4 (finding that the plaintiff, who had not commenced an Article 78 proceeding, nonetheless established "a certainty of success" on his claim that his post-seizure vehicle retention hearing violated his due process rights for failing to comply with Krimstock I).  Whether Plaintiff has sufficiently established that his deprivation was systemic will be addressed infra.

## 2.  Substantive Due Process Claim

To prevail on a substantive due process claim, Plaintiff must establish that that the County infringed on a protected liberty or property interest in an arbitrary or irrational manner that shocks the conscience.  See Natale v. Town of Ridgefield, 170 F.3d 258, 262 (2d Cir. 1999); Local 342 v. Town Bd., 31 F.3d 1191, 1196 (2d Cir. 1994).  Not all property rights, however, are entitled to the protections of substantive due process.  See Local 342, 31 F.3d at 1196.  "Substantive due process protects only those interests that are 'implicit in the concept of ordered liberty,'" id. (quoting Palko v. Connecticut, 302 U.S. 319, 325, 58 S. Ct. 149, 82 L. Ed. 2d 288 (1937))--i.e., those rights that are "so rooted in the traditions and conscience of our people as to be ranked as fundamental," United States v. Salerno, 481 U.S. 739, 751, 107 S. Ct. 1439, 123 L. Ed. 2d 1 (1993)); see also Regents of

_Univ. of Mich. v. Ewing_, 474 U.S. 214, 229, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985) (Powell, J., concurring) ("While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution."); cf. _Albright v. Oliver_, 510 U.S. 266, 272, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." (citing _Planned Parenthood of Se. Pa. v. Casey_, 505 U.S. 833, 847-849, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992))). The Court finds that Plaintiff's property interest in his vehicle is not the type of fundamental right subject to substantive due process protections. _See, e.g._, _Wrench Transp. Sys., Inc. v. Bradley_, 340 F. App'x 812, 816 (3d Cir. 2009) (finding that a plaintiff's personal property interest in his trucks, which were seized by the municipality in connection with a criminal investigation, was not "fundamental" and thus not entitled to substantive due process protections).

Accordingly, the County's motion for summary judgment on the substantive due process claim is GRANTED, Plaintiff's motion on this claim is DENIED, and Plaintiff's substantive due process claim is DISMISSED WITH PREJUDICE.

B.  Monell Liability

A municipality may not be held liable under Section 1983 for alleged unconstitutional actions committed by its employees solely on the basis of respondeat superior.  Monell, 436 U.S. at 690-91.  Rather, as the Court stated above, "to hold a municipality liable in such an action, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (internal quotation marks and citation omitted); see also Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008).  A plaintiff can establish the existence of a municipal policy or custom by showing: (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge and acquiescence can be implied on the part of the policy making officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact within the municipal employees.  Sulehria v. City of N.Y., 670 F. Supp.

2d 288, 320 (S.D.N.Y. 2009); see also Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 478 (E.D.N.Y. 2002).

Here, Plaintiff asserts two grounds for establishing Monell liability: that the County's hearing officers and assistant county attorneys' practice of ignoring Krimstock and the Suffolk County Administrative Code is so widespread that it constitutes a municipal custom and/or that the County failed to train its hearing officers and assistant county attorneys on how to conduct constitutionally sufficient retention hearings. The Court will address each ground separately.

### 1. Municipal Custom

There are three different due process violations that could give rise to municipal liability here: (1) the unnecessary delay of Plaintiff's hearing due to the County's belief that Plaintiff had to be present, (2) the County's failure to satisfy its burden under Krimstock, and (3) Justice DiNoto's failure to issue a statement of findings. As to the unnecessary delay, Plaintiff has presented no evidence regarding any other incidents of delay arising out of the County's erroneous belief that the respondent had to be present, and a single incident involving an employee below the policymaking level is insufficient to support an inference of municipal policy or custom, Oklahoma City v. Tuttle, 471 U.S. 808, 823-24, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985); see also Bliven v. Hunt, 478 F. Supp. 2d 332, 337 & n.2

(E.D.N.Y. 2007) (finding that municipal judges are not policymakers under <u>Monell</u>), <u>aff'd</u>, 579 F.3d 204 (2d Cir. 2009). Similarly, Plaintiff has failed to establish a pattern or practice of hearing officers failing to issue a statement of findings. Plaintiff has introduced four determinations from hearing officers--three from Justice DiNoto that are all identical to the determination in the present case and one from another hearing officer that is similarly deficient. (Pl. 56.1 Stmt. Exs. F, N, Q, R.) Two were accompanied by transcripts of the hearing, and two were not. Without the transcripts, however, the Court cannot determine whether the hearing officer made a statement of findings on the record. Accordingly, the Court cannot find as a matter of law that the two other incidents establish a custom under <u>Monell</u>. <u>See,</u> <u>e.g.</u>, <u>Marcavage v. City of Phila.</u>, No. 04-CV-4741, 2006 WL 2338261, at *9 (E.D. Pa. Aug. 9, 2006) (finding as many as seven incidents insufficient to establish a municipal custom under <u>Monell</u>).

The Court does find that Plaintiff has established that the County has a widespread practice of failing to meet its burden under <u>Krimstock</u>. Plaintiff has introduced transcripts from eleven retention hearings where the assistant county attorney not only failed to introduce evidence of the necessity of retention, but repeatedly misrepresented the law by attempting to shift the burden of establishing hardship onto the respondent. (<u>See</u> Pl. 56.1 Stmt.

Ex. D, at 12-16, 18-19 (transcript of April 23, 2007 hearing, where the County argued that retention was proper because it "ha[d] established probable cause for the DWI arrest" and "would likely succeed on the merits if it was for [sic] the County to bring a forfeiture action against the defendant for retention of the vehicle"--there was no mention of necessity of retention at the hearing and the County questioned the respondent regarding hardship); id. Ex. E, at 25-26 (transcript of December 17, 2007 hearing, where there was no mention of necessity of retention and the County questioned the respondent regarding hardship); id. Ex. G, at 13-14 (transcript of May 19, 2009 hearing, where there was no mention of necessity of retention and the County questioned the respondent regarding hardship); id. Ex. H, at 47-49 (transcript of June 1, 2009 hearing, where the County argued that it "ha[d] proved beyond a reasonable doubt that there was probable cause[,] . . . that there ha[d] been no hardship indicated by [the respondent, and] . . . that [the County] w[ould] be successful on any forfeiture action, if [it was] allowed to retain the vehicle"-- there was no mention of necessity of retention); id. Ex. I, at 11- 12 (transcript of September 22, 2009 hearing, where the County argued that "there was probable cause for the stop and arrest" based on the documentary evidence submitted and that the respondent failed to establish hardship--there was no mention of necessity of retention); id. Ex. J, at 20-23 (transcript of December 7, 2009

hearing, where the County argued that there was probable cause for the stop and arrest based on the documentary evidence submitted, that it would be successful on merits of any forfeiture action, and, in response to the respondent's request that the vehicle be equipped with an interlock device, that "no real hardship ha[d] been established"); id. Ex. K, at 19-20 (transcript of December 12, 2009 hearing, where the County argued that it had established probable cause for the arrest and likelihood of success in a forfeiture action but did not mention alternatives to retention); id. Ex. L, at 23-24 (transcript of April 29, 2010 hearing, where the County argued that it had established probable cause for the arrest and likelihood of success in a forfeiture action and that, "[b]ased on the risk to the public at large, [the respondent] should not be driving" so retention was necessary to preserve the vehicle--whether alternatives to retention were available was not discussed); id. Ex. M, at 12-13 (transcript of July 29, 2010 hearing, where the County argued that it had established probable cause and likelihood of success on the merits, but also argued that retention was necessary because the respondent had prior convictions and "[a] motor vehicle is destructible by their [sic] own nature"--there was no mention of the availability of less-restrictive alternatives to retention); id. Ex. O (the transcript of the hearing in Boyle, discussed supra); id. Ex. P, at 47-49 (transcript of September 28, 2010 hearing where the County argued

that retention was appropriate because: (i) it had established probable cause and likelihood of success in a forfeiture action, (ii) the respondent failed to introduce any evidence regarding hardship, and (iii) retention was necessary to preserve the vehicle in its current condition, even though no discussion of alternatives to retention were discussed).)[9]  The transcripts span a period of over three years, involve four different hearing officers, including Justice DiNoto, and three different assistant county attorneys, including Ms. Green.  Further, although eleven other incidents over a three-year span may not on their own be sufficient to establish municipal liability as a matter of law, Ms. Green testified at her deposition that her training with respect to retention hearings consisted of observing other assistant county attorneys conduct hearings and that the legal arguments that she asserted at Plaintiff's hearing--namely that Plaintiff bore the

---

[9] The County argues that this Court cannot determine whether the County met its burden at these eleven other hearings because Plaintiff has failed to provide the Court with the exhibits introduced at those hearings.  The Court disagrees.  In each of these hearings, similar to Plaintiff's hearing, the County introduced the following documentary evidence:  the charging instrument, an alcohol/drug influence report, a report of the respondent's refusal to submit to a chemical test (if applicable), evidence of any other convictions and the respondent's driving record, a Department of Motor Vehicle printout indicating the registration and title owner, and the Notice of Seizure and Hearing.  The Court is familiar with these types of records and finds that it is not reasonable to infer that such records would contain information regarding whether alternatives to retention would preserve the County's interest in the vehicle.

burden of establishing hardship--was consistent with the training she received. (Antwork Decl. Ex. A, Green Dep. 13-14, 23-24, 110-11, 123-24.) In other words, the other assistant county attorneys were similarly misrepresenting the law and their burden at these retention hearings. Finally, the County has not come forward with one example of a hearing in which the County did, in fact, establish that there were no less restrictive means of preserving the vehicle pending a determination regarding forfeiture. The Court finds that this is sufficient to establish, as a matter of law, that the County's practice of attempting to shift the burden to the respondent and failing to establish the necessity of retention was so widespread as to constitute a custom under Monell.

Accordingly, the Court hereby GRANTS summary judgment in favor of Plaintiff on his procedural due process claim arising out of the County's failure to establish its burden at his retention hearing and DENIES the County's motion for summary judgment on this same claim.

2. Failure to Train

For the purpose of completeness, the Court will address whether Plaintiff has established Monell liability for his other two procedural due process claims by showing a failure to train. To support a claim that a municipality's failure to train amounted to "deliberate indifference," a plaintiff must establish: (1) that "a policymaker [of the municipality] knows 'to a moral

certainty' that [its] employees will confront a given situation;"
(2) that "the situation either presents the employee with a
difficult choice of the sort that training or supervision will
make less difficult or that there is a history of employees
mishandling the situation;" and (3) that "the wrong choice by the
. . . employee will frequently cause the deprivation of a citizen's
constitutional rights." Walker v. City of N.Y., 974 F.2d 293,
297-98 (2d Cir. 1992) (citations omitted). With respect to the
first element, a plaintiff "must do more than show the need for
training on the issue; [he] must show how a particular
policymaker's specific choice with respect to the training
deficiency at issue reflects 'deliberate indifference' to their
constitutional rights, and how this indifference directly caused
their injuries." Ferreira v. Westchester Cnty., 917 F. Supp. 209,
215-16 (S.D.N.Y. 1996) (quoting City of Canton v. Harris, 489 U.S.
378, 388-89, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

In the present case, Plaintiff has failed to introduce
any evidence of how hearing officers are trained; therefore, the
Court must GRANT summary judgment in favor of the County on
Plaintiff's due process claim regarding Justice DiNoto's failure
to issue a statement of findings. Further, although Plaintiff has
introduced some evidence of how assistant county attorneys were
trained to conduct retention hearings, he has failed to identify
any policymakers involved in implementing that training, let alone

"show how a particular policymaker's specific choice with respect to the training deficiency at issue reflects 'deliberate indifference' to their constitutional rights," id. at 215-16. Accordingly, the Court must GRANT summary judgment in favor of the County on these procedural due process claims as well.

CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment on the issue of liability is GRANTED IN PART and DENIED IN PART, and the County's motion for summary judgment is also GRANTED IN PART and DENIED IN PART. Summary judgment is GRANTED in favor of Plaintiff on the issue of liability on the procedural due process claim arising out of the County's failure to meet its burden at retention hearings and is otherwise DENIED. Summary judgment is GRANTED in favor of the County on the substantive due process claim as well as Plaintiff's other procedural due process claims, and those claims are DISMISSED WITH PREJUDICE. The County's motion is otherwise DENIED.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

The action is hereby REFERRED to Magistrate Judge Gary R. Brown to resolve any remaining pretrial issues and to determine whether this action is ready for trial on the issue of damages on the procedural due process claim for which summary judgment has been granted in favor of Plaintiff--i.e., the claim regarding the County's failure to meet its burden at retention hearings.


                              SO ORDERED.


                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

Dated:     August __6__, 2013
           Central Islip, NY